TRADERS' SEC. CO. *v.* SULLIVAN.*

(Division B.    May 30, 1927.)

[112 So. 869.    No. 26365.]

EVIDENCE.    *Parol testimony that trade acceptances were not absolute promises held erroneously admitted, in action by purchaser for value, as varying written contract.*

In action by purchaser for value on trade acceptances evidencing unconditional promises to pay fixed amount of money at a fixed date and place, admission of evidence showing that they were not absolute promises to pay, but were intended only to insure performance of agreement to pay for certain jewelry purchased by acceptor, *held* erroneous, as admitting parol testimony to vary terms of written contract.

---

*Corpus Juris-Cyc References: Evidence, 22CJ, p. 1070, n. 34; p. 1089, n. 31; p. 1152, n. 7. On admissibility of parol evidence to vary terms of consignment contract, see annotation in L. R. A. 1917B, 649; 23 R. C. L. 1221.

APPEAL from circuit court of Smith county.

HON. W. L. CRANFORD, Judge.

Action by the Traders' Security Company against M. E. Sullivan. Judgment for defendant, and plaintiff appeals. Reversed and judgment rendered.

*Welch & Cooper* and *Roy P. Noble,* for appellant.

The acceptances were due and payable at St. Louis, Missouri, and the contract is a Missouri contract and the law of Missouri govern. However, our court takes judicial knowledge of the laws of Missouri and knows that Missouri has the uniform negotiable instruments act which is the same as chapter 244, Laws of 1916. For convenience we are citing the Mississippi negotiable instruments act.

There is a presumption at law that the acceptances were given for a valuable consideration. See section 24, chapter 244, Laws of 1916. There is a presumption of law that the instrument was endorsed before maturity. See section 45, Negotiable Instruments Act.

It is the appellant's contention that there was a consideration for the acceptances. The defendant admitted receiving merchandise, admits signing the acceptances and delivery thereof to the Arch Manufacturing Company. Section 56, Negotiable Instruments Act, sets forth what shall constitute a notice of defect. To constitute notice of an infirmity is the instrument of defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of such fact that his action in taking the instrument amounted to bad faith.

This case is governed by *Fed. Discount Corp.* v. *Bx Alexander Hdw. Co.,* 97 So. 579; and *Despres, Bridges and Noel* v. *Hough Drug Co.,* 123 Miss. 598, 86 So. 359. Also, see, *Kumsan Hat Co.* v. *Balkency,* 108 So. 139.

No fraud on the part of the Arch Manufacturing Company was proved. There was no evidence that the plain-

tiff had notice of any fraud on the part of the Arch Manufacturing Company. The return of merchandise would not be a ground for rescission. There is no hint of anything except that Mrs. Sullivan was over-persuaded to make the purchase.

*S. V. Little,* for appellee.

Appellee agrees that it did receive the merchandise in question, but that they were to be sold on consignment by the appellee and that it was agreed upon by and between the said Arch Manufacturing Company and the appellee that the trader's acceptances were to be executed only for the purpose of a guarantee of the proceeds of the sale of this merchandise or either the return of the goods.

It appears, then, that the appellant contemplated the purchase of the trader's acceptances, and that upon this information to the appellee, appellee saw that fraud had been perpetrated by the said Arch Manufacturing Company, by securing appellee's signature to the trader's acceptances and that the appellee then at once served notice by *registered mail* on appellants that said trader's acceptances had been procured by the Arch Manufacturing Company by fraud and had through fraud secured the signature of the appellee thereon. Notice was also served upon appellant that the merchandise in question had been returned to the said Arch Manufacturing Company. See *Britton* v. *Criswell,* 63 Miss. 374; *Thompson* v. *Neeley,* 50 Miss. 310; *Shaw* v. *Millsaps,* 50 Miss. 380; *Pulliam* v. *Taylor,* 50 Miss. 551. Also under Code of 1906, section 4778, where a fraud is perpetrated and the assignee has knowledge of said fraud perpetrated, then said note is not valid.

It is plain in all the evidence before the court for the appellee that fraud was used in procuring said trader's acceptances from appellee, of which fraud appellant had due notice before it purchased. There is nothing in the

record to constitute a defense to the suit and the verdict for the defendant was correct.

Anderson, J., delivered the opinion of the court.

Appellant, Traders' Security Company, brought this action in the circuit court of Smith county against appellee, Mrs. M. E. Sullivan, on five trade acceptances for fifty-nine dollars and sixty cents each, aggregating two hundred ninety-eight dollars. The consideration for these trade acceptances was a lot of jewelry theretofore purchased by the appellee from the Arch Manufacturing Company. The appellant sued on the trade acceptances as assignee of the Arch Manufacturing Company. There was a trial, and a verdict and judgment for appellee, from which judgment appellant prosecutes this appeal.

Appellee interposed two special pleas to appellant's declaration. In her first special plea she set up, in substance, that she refused to accept the jewelry, the price of which was the consideration for the acceptances sued on; that she did not buy the jewelry absolutely, but on consignment, to be sold on commission, and when the jewelry was shipped to her she refused to accept it. By her second special plea, appellee set up that appellant had notice when it purchased the acceptances from the Arch Manufacturing Company that the acceptances had been obtained by the Arch Manufacturing Company through fraud, and without any valuable consideration.

Appellant, to make out his case, introduced the five trade acceptances, and rested. Under the Negotiable Instruments Act, sections 24 and 45, Code of 1906 (sections 2602 and 2623, Hemingway's Code), there went with the introduction of the acceptances the *prima-facie* presumption that appellant had paid value therefor; that appellee and the Arch Manufacturing Company, whose signatures appeared thereon, had become parties thereto for value; and that the acceptances had been purchased by appellant before maturity.

Appellee's defense depended upon the testimony of herself and her son. Taking their testimony for its full worth, it tended to make the following case in her behalf: Appellee was engaged in the mercantile business. She bought the jewelry, which represented the consideration for the acceptances sued on, from the Arch Manufacturing Company. The acceptances were dated September 8, 1925, at St. Louis, Missouri. Each was made payable on a date certain to the order of the Arch Manufacturing Company at their office in St. Louis, Missouri. Each of the acceptances was drawn for a fixed amount, namely, fifty-nine dollars and sixty cents. The consideration named in each was, using the language of the acceptances, "the obligation of the acceptor herein arises out of a purchase of goods from the drawer." The acceptances were addressed to appellee at Mize, in this state, her post office address and place of business. Indorsed on the face of each acceptance was the following: "Accepted: M. E. Sullivan."

On the back of each was the following:

"Pay to the order of, without recourse on us, Traders' Security Company." [Signed] "Arch Manufacturing Company, per W. A. Blackstod, President."

They testified that appellee did not make an absolute purchase of the goods, although by the trade acceptances she agreed to pay for them unconditionally; that she bought the jewelry on consignment, to be sold on commission, with the right to return all remaining unsold at the end of the year; that when the jewelry was delivered to appellee she was dissatisfied with it, and returned it to the seller, the Arch Manufacturing Company; that the Arch Manufacturing Company refused to accept the jewelry for some time after it was returned to it; that it was not until after appellee's store in which she conducted her mercantile business had been burned that the Arch Manufacturing Company accepted the jewelry; that the trade acceptances were executed by appellee, not as an absolute promise to pay for the jewelry,

but to insure that appellee would pay for that part she might sell, and return the unsold portion at the end of the year; that before purchasing the trade acceptances appellant wrote appellee, inquiring whether they represented a valid obligation on her part to pay the amounts named in the acceptances; that appellee replied that they were not absolute promises to pay, but, on the contrary, they were intended for the purpose alone of insuring appellee's performance of the agreement to pay for any of the jewelry she might sell, and to return that unsold at the end of the year; that, in other words, appellee notified appellant before purchasing the trade acceptances, that the consideration therefor was not as represented in the trade acceptances, but, instead, that the consideration was, as stated, for the handling of the jewelry on consignment. The evidence showed, however, that appellant purchased the trade acceptances before the Arch Manufacturing Company had accepted the jewelry returned to it by appellee. There was no evidence whatever tending to show that appellee was overreached by the Arch Manufacturing Company by any false or fraudulent representations. According to the testimony in appellee's behalf, she executed the trade acceptances knowing exactly what she was doing, although she may not have known the legal effect of what she did.

All the testimony offered by appellee was admitted by the court over appellant's objection. We think the question involved is solvable by the well-known rule of evidence that parol testimony is not admissible to vary the terms of a written contract. Here we have the five trade acceptances sued on. They are written contracts, signed by appellee. They evidence unconditional promises to pay a fixed amount of money at a fixed date and at a fixed place. The trial court permitted appellee, by parol testimony, to contradict the plain provisions of the acceptances by showing that they were not absolute promises to pay, but, on the contrary, that they were not to be paid in full in any event by appellee. If there had

been any evidence that the acceptances were procured from appellee by the Arch Manufacturing Company through false and fraudulent representations and, that appellant had notice of such fraud when it purchased the acceptances, or had notice of facts which, if followed up, would have led to such knowledge, there would be a different case. If the Arch Manufacturing Company itself had retained the acceptances, and had sued appellee thereon after their maturity, before accepting the return of the goods, and appellee had defended on the grounds set up in the present case, the Arch Manufacturing Company would have been entitled to a directed verdict on the ground that appellee could not defend the action by substituting for the written contract another contract by means of parol testimony.

To illustrate the principle involved by a simple transaction: A. sells B. a horse for one hundred dollars, for the payment of which B. executes his promissory note payable six months after date. Under the terms of the note there is an absolute promise to pay, but it is agreed orally when the note is executed that B. may try the horse out, and, if not satisfied with it, may return it to A. at any time before the maturity of the note, and receive the note back canceled. Before the maturity of the note, B. tenders the horse back to A., who refuses to accept it. After maturity A. sues B. on the note. B. plants his defense on the oral agreement made at the time of the execution of the note. Under the law, can such a defense be successfully made? It seems clearly not. The reason is that, in order to make such a defense, B. would have to be permitted to vary the terms of the written contract, the note, by parol testimony. And, of course, C. as the purchaser of the note for value before maturity from A., to say the least of it, stands in no worse attitude than A.

*Reversed, and judgment here for appellant.*